**SIGNED THIS: February 05, 2009**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TERRY G. DAVIS and | ) | |
| KIMBERLY D. DAVIS, | ) | No. 04-80068 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| OSF HEALTHCARE SYSTEMS, INC., | ) | |
| an Illinois not for profit corporation d/b/a | ) | |
| SAINT FRANCIS MEDICAL CENTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 08-8023 |
| | ) | |
| TERRY G. DAVIS and | ) | |
| KIMBERLY D. DAVIS, | ) | |
| | ) | |
| Defendants. | ) | |

### O P I N I O N

This matter is before the Court on the Motion for Summary Judgment filed by the Plaintiff, OSF Healthcare Systems, Inc. (OSF). OSF's amended complaint alleges that the

Debtors, Terry G. Davis and Kimberly D. Davis (DEBTORS), intentionally failed to include OSF on a schedule of postpetition debts causing OSF to needlessly incur attorney fees.

The DEBTORS filed their Chapter 13 case on January 7, 2004 and a Chapter 13 Plan was confirmed on April 23, 2004. On June 21, 2006, during the pendency of the Chapter 13, an accident occurred that involved the DEBTORS' minor child. OSF provided medical services to the child at a cost of $29,190.90 for which the DEBTORS agreed to be responsible. OSF, not previously a creditor of the DEBTORS, was not made aware of the bankruptcy case. After falling behind on their Plan payments, the DEBTORS converted to Chapter 7 on November 6, 2006. They filed a schedule of postpetition debts that lists fifteen different debts owed to a total of twelve different creditors, all but one of which is for medical expenses. OSF was not included on the schedule and did not receive the Notice of the case mailed to those creditors that did appear on the schedule. The Chapter 7 case proceeded as a no asset case, no distribution occurred, and the DEBTORS received a discharge on February 12, 2007. The Bankruptcy Clerk closed the case on March 13, 2007.

Meanwhile, a personal injury claim was commenced in state court on behalf of the child against which OSF asserted a statutory claim of lien. The sum of $20,000 was subsequently paid to OSF on account of its lien and an additional $2,000 was paid from automobile insurance coverage, leaving an unpaid balance of $7,190.90, which the DEBTORS were unable to pay. OSF, still unaware of the DEBTORS' filing, brought suit against the DEBTORS to collect the balance of the hospital bill. OSF did not learn of the bankruptcy case until October 12, 2007, when it was advised by the DEBTORS' lawyer at a hearing in the collection action.[1]

---

[1] DEBTORS admit this fact in their answer to the amended complaint.

OSF filed its adversary complaint on March 6, 2008. OSF alleges, and the DEBTORS admit, that as a result of the DEBTORS' failure to cause OSF to be notified of the bankruptcy case, it incurred attorney fees and court costs in pursuing the state court collection action. OSF's theory of recovery is concisely stated in its Pretrial Statement, as follows:

> Plaintiff's theory for its cause of action is that the Debtors are guilty of fraud or intentional design in failing to list Plaintiff's debt as part of the conversion of its Chapter 13 Plan, which pre-existed this debt, to a Chapter 7 thereby attempting to discharge this debt without providing notice to Plaintiff.

The cause of action is properly characterized as an intentional tort in the nature of or akin to the tort of abuse of process. Under Illinois law, abuse of process is defined as the misuse of legal process to accomplish some purpose outside the scope of the process itself. The tort has two elements: (1) the existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings. *Kumar v. Bornstein,* 354 Ill.App.3d 159, 165, 820 N.E.2d 1167, 1173 (Ill.App. 2 Dist. 2004).[2]

In the amended complaint, OSF alleges that it "is entitled to sanctions for Debtors' omission and may be entitled to have its debt declared non-dischargeable." As sanctions, OSF seeks reimbursement of its attorney fees and costs incurred in the state court collection suit as well as in this adversary proceeding, and a determination that its debt for $7,190.90 is nondischargeable under Section 523(a)(3)(A). The DEBTORS deny any wrongful intent

---

[2] Unlike the federal courts, Illinois is a fact-pleading jurisdiction. In order to properly plead a claim for abuse of process, a plaintiff must allege facts that identify the improper purpose that motivated the defendant's conduct. *Kumar v. Bornstein,* 354 Ill.App.3d at 165. OSF's amended complaint fails to meet this standard. No facts are alleged that demonstrate that the DEBTORS intended to cause harm to OSF or that provide a reason why the DEBTORS would want to harm OSF. The sufficiency of the allegations, however, is not at issue in this adversary proceeding. For the purpose of this proceeding, this Court must accept that OSF is characterizing the DEBTORS' conduct as tortious, regardless of how unsupported and implausible that characterization may be.

3

or ill-will toward OSF, asserting that they believed OSF's debt would by paid out of the child's injury claim proceeds.

## ANALYSIS

The amended complaint is founded on several faulty premises. First, the Bankruptcy Code does not expressly create a private right of action for a debtor's mistakes or even intentional omissions on schedules filed in the case. Congress knows how to create a private right of action when it wants to. *See* 11 U.S.C. § 362(k). Neither is there any basis to infer a private right of action. The existence of a private right of action is not to be inferred haphazardly and requires affirmative evidence of Congressional intent. *Pertuso v. Ford Motor Credit Co.,* 233 F.3d 417, 421 (6th Cir. 2000). No such evidence exists. Nor is Section 105(a) to be construed as a catch-all private right of action for the enforcement of other Bankruptcy Code provisions. *In re Dyer,* 322 F.3d 1178, 1190 (9th Cir. 2003). *Cf. Pertuso, supra,* (provision governing discharge injunction and reaffirmation agreements does not impliedly create private right of action for asserted violation of that provision); *In re McGregor,* --- B.R. ----, 2008 WL 5225743, (Bankr.N.D.Miss. 2008) (no cause of action exists under the Bankruptcy Code against a creditor for filing a proof of claim that is barred by statute of limitations).[3]

Second, by requesting "sanctions," OSF seems to be inviting the Court to exercise its contempt powers. Errors or omissions on bankruptcy schedules, however, are generally not contemptuous. Civil contempt is triggered when a party violates a court order or a statutory injunction that becomes effective by entry of an order. *In re Consolidated*

---

[3]To the extent that OSF's amended complaint could be construed as alleging some sort of strict liability theory, that a debtor who knowingly fails to schedule a creditor is liable *per se* for any postpetition fees and costs incurred by the creditor, such theory is without precedent or support in the Bankruptcy Code and is not viable.

4

*Industries,* 360 F.3d 712, 716 (7th Cir. 2004); *Cox v. Zale Delaware, Inc.,* 239 F.3d 910 (7th Cir. 2001). A debtor's obligation to file a schedule of postpetition debts upon conversion is embodied in Fed. R. Bank. P. 1019(5) and arises by operation of that rule, not by a court order. Civil contempt is not an appropriate remedy here.

Third, the Bankruptcy Code provides certain consequences for a debtor's failure to schedule a creditor; an award of damages is not among them. In Chapter 13 cases, a prepetition debt owed to an unscheduled creditor, whether omitted by design or oversight, is not discharged. *In re Hairopoulos,* 118 F.3d 1240 (8th Cir. 1997); *In re Brooks,* 370 B.R. 194, 204-05 (Bankr.C.D.Ill. 2007). The rule in a Chapter 7 case, however, is to the contrary. Prepetition debts owed to omitted creditors are discharged notwithstanding the omission, unless assets were administered or the debt is nondischargeable under Section 523(a)(2), (4) or (6). *Judd v. Wolfe,* 78 F.3d 110 (3rd Cir. 1996). This is the rule embodied in Section 523(a)(3), relied on by OSF, which provides as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
> * * *
>
> (3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit–
>
>> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
>>
>> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had

> notice or actual knowledge of the case in time for such timely filing and request.

11 U.S.C. § 523(a)(3).

In this case, the event of conversion has a material effect on the dischargeability of the hospital bill balance owed to OSF. The services were rendered after the Chapter 13 petition was filed but before conversion to Chapter 7. As a postpetition debt, it was not subject to discharge in the Chapter 13 case. By operation of Section 348(b), however, the date of the order for relief became the date of conversion. 11 U.S.C. § 348(b). The hospital debt thus arose before the date of the order for relief in the converted Chapter 7 case and became subject to the Chapter 7 discharge under Section 727(b). So OSF correctly views the hospital bill balance as a debt subject to the Chapter 7 discharge received by the DEBTORS.

The same is not true, however, of the claim for attorney fees and costs which OSF alleges as an intentional tort. Assuming the viability of the tort claim under state law, that claim arose post-conversion. The schedule of postpetition debts was filed after the conversion and OSF's attorney fees and costs incurred because of the omission were not incurred until after the conversion. Under Illinois law, a cause of action in tort does not accrue until the plaintiff suffers injury. *General Cas. Co. of Illinois v. Carroll Tiling Service, Inc.,* 342 Ill.App.3d 883, 898, 796 N.E.2d 702, 713 (Ill.App. 2 Dist. 2003).

OSF alleges that it filed the collection suit in February, 2007, three months after the conversion to Chapter 7 that established November 6, 2006, as the cutoff date for debts subject to discharge under Section 727(b). Therefore, the attorney fees and costs in question were incurred post-conversion, the claim for recovery of those fees and costs arose post-

conversion, and, as such, it is not subject to the discharge received by the DEBTORS. That the fees and costs were incurred attempting to collect a debt that is dischargeable in the DEBTORS' Chapter 7 case or that they were caused by an omission that occurred during the case, does not alter or affect the timing of when the claim arose vis-a-vis the order for relief.

As a postpetition claim, this Court is without jurisdiction to determine the existence of or adjudicate the rights of the parties with respect to OSF's state law tort claim for attorney fees and costs incurred in the collection suit. In *In re Seybold,* 2008 WL 1321878 (Bankr.N.D.Ind. 2008), a bank brought an adversary proceeding alleging its debt should be determined nondischargeable and that the debtors committed "bank fraud" under an Indiana criminal statute that allowed recovery of treble damages and attorney fees. The debtors counterclaimed, alleging that the bank's assertion of the bank fraud claim constituted an abuse of process, a tort committed upon them after the date of the petition, for which they sought to recover damages, including attorney fees. Determining that it lacked subject matter jurisdiction over the debtors' counterclaim, the court held that an action seeking to recover damages for a tort allegedly committed after the date of the petition is not a civil proceeding arising under title 11, arising in or related to a case under title 11 for purposes of 28 U.S.C. § 1334(a). It made no difference that the tort was committed during the pendency of a bankruptcy case in the context of an adversary proceeding filed with respect to that case.

In *In re Akl,* 397 B.R. 546 (Bankr.D.Col. 2008), a hospital commenced an adversary proceeding seeking a nondischargeability determination. The debtor filed a motion for

7

leave to file a counterclaim asserting claims for abuse of process, malicious prosecution, and intentional infliction of emotional distress, all based on the hospital having filed the adversary complaint. Since the basis for the counterclaim arose postpetition, the court determined it was not property of the estate. Finding no jurisdiction to hear the counterclaim, the court reasoned that jurisdiction is not established by the mere coincidence that the wrongful conduct took place in a bankruptcy case. Following the holdings and reasoning of *Seybold* and *Akl*, this Court determines that OSF's claim is outside of the scope of the Court's limited jurisdiction.

The remaining issue is whether OSF's pre-conversion claim for $7,190.90 is nondischargeable under Section 523(a)(3). OSF makes no argument that the debt is of a kind specified in Section 523(a)(2), (4) or (6), so Section 523(a)(3)(B) is inapposite. Subparagraph (A) of that section would only permit a nondischargeability determination if, in an asset case where a claim bar date is set, the creditor does not receive notice or have actual knowledge of the case in time to file a timely proof of claim. The DEBTORS' case was a no asset Chapter 7 where no claim bar date was set. Under these circumstances, Section 523(a)(3)(A) can provide no relief to OSF. *See In re Madaj,* 149 F.3d 467 (6th Cir. 1998).

OSF relies upon *In re Smith,* 68 B.R. 897 (Bankr.N.D.Ill. 1987), where the debtor moved to reopen his Chapter 7 case to add omitted creditors in the belief that such action was necessary to obtain a discharge of those debts. The creditors contended that the motion should be denied on the basis that the omission of the creditors on the original schedules was not due to mere inadvertence, because the debtor's lawyer participated in

a state court lawsuit filed by the creditors and knowingly concealed the bankruptcy from them. Applying Section 350(b), governing the reopening of closed cases, the bankruptcy court determined that the debtor, by delaying two years before seeking to amend his schedules, "demonstrated reckless disregard for the accuracy of his schedules, if not intentional delay in failing to schedule" the omitted debt. Based on that determination, the court denied the debtor's motion to reopen.

OSF also relies upon *In re Doherty,* 176 B.R. 483 (Bankr.S.D.Ill. 1994) (Lessen, J.), involving debtors who received a discharge in a no asset Chapter 7 case in 1984. Prior to the bankruptcy, a creditor had obtained a default judgment against the husband debtor for an injury claim in the amount of $10,756. The debtors failed to list the judgment creditor in their bankruptcy schedules. In 1994, after the creditor recorded a judgment lien, the debtors reopened their case and filed an adversary proceeding seeking a determination that the unscheduled debt was discharged in 1984.

Rejecting the creditor's argument that the debt was nondischargeable under Section 523(a)(3), the court found it clear from the language of the statute that the failure to schedule a claim is not enough to render it nondischargeable. Since the creditor conceded it did not have a nondischargeability claim under any other provision of Section 523(a), and since there was no opportunity to file a claim in the debtors' no asset case, the court held that "§ 523(a)(3) is not applicable, and the corresponding debt is dischargeable."[4] *Doherty,* 176 B.R. at 485. The court also noted, in *dictum*, that it would consider denying a debtor's

---

[4] In accord is *In re O'Shaughnessy,* 252 B.R. 722, 738 (Bankr.N.D.Ill. 2000) (Section 523(a)(3) protects only the creditor's right to file a proof of claim), which is also cited by OSF. However, since an adversary proceeding had not been filed, the court's comments about Section 523(a)(3) and the consequences of purposely using an incorrect address for a creditor are *dictum.*

motion to reopen a closed case under Section 350, for the purpose of adding an omitted creditor, "where there is a finding of fraud or intentional design in the omission."

The last opinion relied upon by OSF is *In re Turnbull,* 1997 WL 33479345 (Bankr.C.D.Ill. 1997) (Lessen, J.), where the debtor filed a motion to reopen a closed case to add an omitted creditor. In its objection, the creditor argued that under Section 523(a)(3)(A) a debt cannot be discharged if the debtor knows of the creditor and fails to list it so that the creditor is denied an opportunity to timely file a proof of claim. Without ruling on that argument, the court granted the motion to reopen as there was no evidence that the omission was "fraudulent or intentional." With no explanation, the court ordered the debtor to pay attorney fees of $200 to the creditor and gave the creditor 60 days to file a complaint to determine the dischargeability of its debt.

These cases recognize a clear distinction between the issue of reopening under Section 350 and the issue of nondischargeability under Section 523(a)(3). OSF conflates those issues and ignores that distinction.

A bankruptcy court has broad discretion whether to reopen a closed case. *In re Chalasani,* 92 F.3d 1300 (2nd Cir. 1996). *Smith* is an example of a court using a debtor's unjustifiable delay, as a discretionary basis to deny a motion to reopen. The *Turnbull* court applied the same analysis, but came to the opposite conclusion, allowing the reopening based on the absence of delay or fraudulent intent. Those courts applied that analysis only in the context of a motion to reopen, not in the context of whether the omitted debt was dischargeable.[5]

---

[5] It is now well-established that belated scheduling of an omitted creditor in a no asset case has no effect on whether the debt is discharged. *Judd v. Wolfe,* 78 F.3d 110 (3rd Cir. 1996); *In re Cruz,* 254 B.R. 801 (Bankr.S.D.N.Y. 2000); *Matter of McDaniel,* 217 B.R. 348 (Bankr.N.D.Ga. 1998). Motions to reopen no-asset Chapter 7 cases to add omitted creditors are now rarely filed.

10

The court in *Doherty,* on the other hand, did not consider the debtor's intent respecting an omitted creditor or the issues of delay or prejudice to the creditor, when ruling on the nondischargeability issue under Section 523(a)(3), since issues of intent and prejudice are not relevant to the two exceptions to discharge stated in subparagraphs (A) and (B). *Doherty* supports the proposition, with which this Court agrees, that a debtor's knowledge and intent respecting an omission and actual harm to the creditor from the omission, other than from missing the bankruptcy deadlines for filing claims and adversary complaints, are not relevant under Section 523(a)(3).

OSF, in the amended complaint and Motion for Summary Judgment, implicitly argues that, in considering Section 523(a)(3), the Court should follow the same analysis used by some courts, including *Smith*, for motions to reopen under Section 350. This argument must be rejected as contrary to the plain language of Section 523(a)(3). The two exceptions set forth in subparagraphs (A) and (B) clearly and unambiguously do not contemplate consideration of extraneous or equitable factors. The exceptions to discharge are construed strictly against a creditor and liberally in favor of a debtor. *In re Morris,* 223 F.3d 548, 552 (7th Cir. 2000). There is no reason to believe that Congress intended Section 523(a)(3) to include an unstated exception for situations where the debtor acted with wrongful intent in omitting a creditor or where the creditor suffered harm because of the omission. This Court will not construe the statute to add an implied exception.

Since neither subparagraph (A) nor (B) of Section 523(a)(3) is applicable, there are no set of facts that OSF could prove that would render its claim nondischargeable. It follows that the DEBTORS' pre-conversion debt to OSF in the amount of $7,190.90 is

dischargeable and was discharged when the DEBTORS received their discharge. OSF's Motion for Summary Judgment must be denied and judgment should be entered for the DEBTORS on that claim. In addition, in light of this Court's determination that any tort claim for attorney fees and costs that OSF might have is not cognizable under bankruptcy law and, if cognizable under state law, is a post-conversion debt not discharged in this case, no relief can be provided in this forum and that claim should be dismissed. This adversary is thereby concluded.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###